STATE OF MISSOURI at the relation of IONE STONE, FRANCES BORLAND, PHILLIP SLATTERLY, HELEN SHATTO, ZELLAH SCOTT, LURA C. WEILAND, MARGARET EHRNMAN, WILLIAM CALVERT, MARION TITSWORTH, ORA HIGGINS, DOROTHEA SAYERS, ELMA J. EYNATTEN, EARL GIBBONS, WILMA BAUGHMAN, EDITH LAMB, ELLAMAI ROCK, MYRTLE JACOB, MAMIE RILEY and LULA KENNEDY, Relators, v. HARRY L. THOMAS, THOMAS R. HUNT, HERMAN M. LANGWORTHY and WILLIAM F. WOODRUFF, Constituting the Board of Election Commissioners of Kansas City, Missouri.—159 S. W. (2d) 600.

Court en Banc, March 6, 1942.

*Marcy K. Brown, Jr.*, and *James M. Larkin* for relators.

24

*Henry Arthur* and *James T. Britt* for respondents.

CLARK, J.—Prohibition. Relators claim to be judges and clerks of election in certain precincts of certain wards in Kansas City. Respondents constitute the Board of Election Commissioners of that city.

Each of the relators was, in 1940, duly appointed and commissioned as a judge or clerk for a term ending sixty days before the next presidential election in 1944, under the provisions of Sections 12099, 12105, both inclusive, Revised Statutes Missouri 1939, Missouri Statutes Annotated, page 3943.

On various dates from June 3 to October 17 in the year 1941, the Board redistricted some of the precincts in certain wards. This resulted in a change of the boundary lines of the precincts affected, but no change in the boundary of any ward. In three wards the

number was increased, and in at least one instance the number of a precinct was changed without changing the boundary lines of the precinct.

On January 19, 1942, the Board passed a resolution and entered same on its minutes, reciting the fact that changes had been made in precinct boundaries, stating that such changes abolished the old precincts and terminated the official status of the judges and clerks, and stating that the Board desired to reappoint some of the judges and clerks. The resolution then ordered that a letter be sent to each judge or clerk, whom it desired to reappoint, to come to its office and receive a commission.

Relators say that the positions they hold are public offices; that they possess all the qualifications required by statute and were duly appointed for a definite term; that the Board has attempted and is attempting to oust them from their offices without filing charges against them and without giving them notice and a hearing. That the action of the Board is illegal and void, being in excess of its jurisdiction, and that relators have no other adequate remedy.

Respondents concede that relators are public officers appointed for a definite term, and do not dispute that the Board is without authority to oust relators from their offices except upon sufficient charges and after notice and hearing; but respondents contend that the action of the Board in re-arranging precinct boundaries was an administrative action well within the Board's statutory authority; that the change of boundaries had the legal effect of abolishing the precincts and creating new ones and the terms of office of relators were thereby terminated. Respondents also contend that prohibition is not a proper remedy in the premises.

So, then, the only legal questions presented are: Did the change of boundaries have the effect of abolishing the old precincts and terminating the offices of relators? If not, is prohibition the proper remedy?

█ Section 12099, supra, provides that it shall be the duty of the Board to divide the city into election precincts, "regarding ward lines," each precinct to contain as nearly as practicable five hundred actual voters; and the precincts in each ward shall be numbered from one upward, consecutively.

Other sections cited above prescribe the qualifications for judges and clerks of election and provide in great detail the method to be followed by the Board in appointing judges and clerks.

Judges and clerks must either reside, be employed or have a place of business in the ward for which they are selected to act. Each one takes an oath of office and is commissioned for a term of four years to serve in a certain numbered precinct in a certain ward and to be paid a specified per diem for days actually served. They are exempt

from jury service and subject to prosecution for failure, without good cause, to serve as such judges or clerks.

The Board is given no express power to remove a judge or clerk, except that on election day the Board may temporarily remove any such official who in its opinion is failing to perform his duty. Undoubtedly the Board has the implied power of removal for cause, but can only exercise such power after notice and hearing. [State ex rel. v. Maroney, 191 Mo. 531, 90 S. W. 141.]

We have been cited to no Missouri case dealing with the effect on existing election districts by reason of a change in boundaries. Respondents quote from McCrary on Elections, (4 Ed.), p. 209, which cites the case of Penn. Dist. Election Case, Bright Election Case 517, North Whitehall v. South Whitehall, 3 S. & R. 116. Those authorities are not in point. They merely hold that when an election district is actually abolished the terms of office of the election officials in that district are terminated. The Penn. Dist. Election case was decided in 1848 by the Pennsylvania Court of Quarter Sessions under a statute which not only changed the boundaries of the election districts, but also destroyed old wards or townships and created new ones.

In a more recent case, In re Prospect Park Borough Election Districts (Pa.), 146 Atl. 28, the Supreme Court of Pennsylvania has held that, where an election board created five election districts out of two, the old election districts were not abolished and the officials of such districts continued in office.

That case seems to be squarely in point and based upon sound reason. A mere change in the boundaries of a city would not abolish the city offices. Why should a different result ensue from a change of boundaries of an election district, especially where the officials are not required to reside in the district? To so hold would give the Board the power to summarily remove any and all election officials by merely making a slight change in boundaries. Of course, in those instances where certain numbered districts have been abolished, because no longer needed to maintain the required quota of five hundred voters in each district, the offices of election officials are abolished. Also, where new numbered districts have been added the Board has power to appoint the necessary officials. Otherwise, the officials continue in office in the numbered precincts for which they are commissioned until they resign or are removed for cause.

 Is prohibition a proper remedy in the premises?

It is conceded that relators are public officers and cannot be removed except for cause. Also that question was squarely decided in State ex rel. v. Maroney, supra. The action of the Board, in construing the statutes to have the effect of abolishing the election offices, was a judicial act which can be prevented by prohibition because in excess of the Board's jurisdiction. Title to office being involved, this court has jurisdiction. True, prohibition is a discretionary writ and not

to be invoked if there is another adequate remedy. The primary election in Kansas City is to be held on March 10 and the regular city election on March 31, 1942. On account of the shortness of time and for other reasons we do not believe any other remedy would afford adequate relief to relators. [State ex rel. v. Maroney, 191 Mo. 531, 90 S. W. 141; State ex rel. v. Elkin, 130 Mo. 90, 30 S. W. 333; State ex rel. v. Aloe, 152 Mo. 466, 54 S. W. 494; State ex rel. v. Jones, 274 Mo. 374, 202 S. W. 1117.]

Since the issues were made up in this case, a number of other persons have filed an application to be admitted as parties relators and respondents have filed a supplemental return in opposition to such application. The supplemental return raises certain issues of fact as to the qualifications and present status as election officials of these additional persons. Because we are unable to determine such fact issues on the record before us and believing that the Board will be governed by the views herein expressed as to the status of all persons, whether parties to this proceeding or not, we hereby overrule the application of such additional persons to become parties relators.

For the reasons given, our preliminary rule of prohibition against respondents is hereby made absolute. All concur.